**Affirmed and Majority and Dissenting Opinions filed July 18, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00550-CV

## MELISSA SHULTZ ON BEHALF OF ZACHARY TAYLOR SHULTZ AND THEIR TWO MINOR CHILDREN, T.A. AND A.S., Appellant

### V.

## LONE STAR ROAD CONSTRUCTION, LTD., Appellee

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2013-57989**

## DISSENTING OPINION

The majority concludes the summary-judgment evidence fails to raise a fact issue on causation. Because I disagree, I respectfully dissent.

The majority decides that Shultz's expert, Edward Carrick, "assumed that another vehicle drove over the Tow Hook in this area, launching it towards the Truck." As set forth in the majority opinion, Lone Star's own expert, Dr. Harry Smith, opined that the tow hook was "kicked up" by westbound traffic and then came

across the median barrier to strike the truck. It was the opinion of both experts that a vehicle on the roadway made contact with the tow hook, the tow hook became airborne, and the tow hook, coming from the left side, struck the windshield of the truck. The difference in opinion between Carrick and Smith was the location of the tow hook before it left the ground. Smith concluded the tow hook was on the westbound side of the median barrier while Carrick's calculations led to his determination that the tow hook was on the shoulder of the eastbound traffic lanes.

The majority characterizes Carrick's opinion as a bare "assumption" because the driver of the truck, Freeman (1) told police he did not see another vehicle around him at the time of the accident; (2) stated in his deposition that the closest vehicle to the truck was three to five car lengths; and (3) testified nothing out of the ordinary occurred. The majority then concludes that because Freeman did not see the vehicle, it did not exist, and therefore Carrick's opinion is "based on an assumed fact that varies materially from the actual facts." From that conclusion, the majority decides Carrick's affidavit is not competent evidence.

The evidence presented by the motion and response are to be reviewed in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Reviewing Freeman's testimony in the proper light, I would conclude a genuine issue of material fact was raised which precludes summary judgment—where was the tow hook before it became airborne and made contact with the vehicle?

Freeman testified he saw the tow hook prior to impact, moving from left to right, at the top of the windshield. The damage to the windshield and A-pillar of the

truck indicated the tow hook had significant left to right velocity. Freeman testified that his vehicle was traveling in the third lane from the left shoulder. The crash report shows Freeman in the third lane. However, Freeman also said that he was in the second or third lane.

Freeman testified there was other traffic, but it was not heavy. He was asked if there was anything that "stood out in his mind — in terms of traffic or anything unusual on the roadway?" Freeman answered, "No." Freeman testified he did not remember cars specifically in front of him or in other lanes being very close and said that he was not paying attention to the west side at all. Freeman testified there were not a lot of cars in front of the truck, and also said that he did not think any vehicle was in front. According to Freeman, the closest vehicle was three to five car lengths from the truck. No one asked, and Freeman was not specific, as to whether his testimony concerned only the cars in front of his vehicle, or the cars on the roadway to the side or possibly behind the truck, even possibly in the truck's "blind spot." Further, the "three to five car lengths" was not defined by the type of car or the speed of the other vehicles. Freeman testified that he was driving "around 65." In spite of this lack of specificity, and without reference to any evidence of the width of the shoulder or the lanes of the roadway, the majority concludes that a vehicle in the area shown in Carrick's diagram "would have been less than three car lengths from the Truck."

The majority does not define "actual" facts, as opposed to any other kind, but determines Freeman's testimony that he recalled nothing unusual on the roadway to be conclusive that there was no vehicle that struck the tow hook and therefore Carrick's calculations are based on an "assumption."[1] Freeman's testimony does not

---

[1] Although Lone Star objected to Carrick's methodology or data, they did not obtain a ruling from the trial court regarding Carrick's expert opinion.

3

prove as a matter of law there was no vehicle that struck the tow hook. There are any number of reasons why Freeman may not have seen a vehicle prior to its impact with the tow hook: it is conceivable that Freeman did not look to the left immediately prior to the vehicle's impact with the tow hook, a vehicle could have moved onto the shoulder and back onto the roadway immediately before the impact, and certainly, after the impact, Freeman's testimony reflects he was focused on calling 911 and exiting the roadway. Thus, the fact that Freeman did not notice a vehicle on the shoulder does not establish as a matter of law that Carrick's opinion that a vehicle on the shoulder struck the tow hook is "based on an assumed fact that varies materially from the actual facts."

The majority further rejects "Carrick's conclusion that the Tow Hook traveled 45 feet from its launching point to the point of impact with the Truck" because it is "conclusory and speculative and thus incompetent evidence." Carrick's affidavit sets forth the following factual bases for his opinion:

- Photographs of the vehicle following the incident establish that the tow hook landed in a particular portion of the windshield of the Ford, the center of which was approximately 4.75 feet above ground.

- The driver of the vehicle in which the plaintiff was injured also testified that the tow hook was moving from "left to right" (Freeman, James, Page 39, lines 8 through 10), and that the tow hook was moving downward, or "falling," before impact, (Freeman, James; Page 46; Lines 2 through 9). The dimensions of the tow hook are approximately 8" x 4.5" x 1.5" and its weight is approximately five pounds.

- Using recognized and accepted standard engineering principles - namely projectile motion equations - I was able to determine that: (i) the tow hook would have traversed a horizontal distance of over fifty-four (54) feet from launch to landing had it not encountered the Ford and (ii) the tow hook would have impacted the Ford over forty-five (45) feet from its initial launch point. The formulae I used to arrive at these conclusions are shown below. This set of equations was chosen as they represent the recognized standard equations used for describing an article in motion through the air. All engineering and physics

4

standards and practitioners will, in all cases, confirm that these are indeed the correct and the only sets of equations to define the projectile motion of the tow hook:

$V_{xo} = V_o * \cos(\Theta)$; Initial velocity in the x-direction

$V_{yo} = V_o * \sin(\Theta)$; Initial velocity in the y-direction

$\Delta_y = V_{yo} * t - \frac{1}{2} * g * t2$; Displacement in the y-direction

$\Delta_x = V_{xo} * t$; Displacement in the x-direction

With these equations, and knowing the tow hook passed through a vertical height (or displacement) of approximately 6 feet (as determined through Freeman testimony and Ford vehicle specifications) and 4.75 feet (as determined through study of the subject Ford photographs and measurements) a fit for the actual flight path of the tow hook was found.

The majority finds these bases lacking because Carrick did not set forth in his affidavit his actual calculations or define the variables. The majority is, in essence, requiring Carrick to prove his hypothesis. But a nonmovant is not required to marshal its proof to defeat a no-evidence summary judgment; the nonmovant must only point out evidence that raises a fact issue on the challenged element. *Carlson v. Fiesta Mart, Inc.*, No. 14-99-00581-CV, 2000 WL 1840308, at *1 (Tex. App.—Houston [14th Dist.] Dec. 14, 2000, no pet.) (mem. op.) (citing Tex. R. Civ. P. 166a (comments)).

I disagree with the majority's conclusion that there is no evidence, or no competent summary-judgment evidence, that the tow hook was in the area controlled by Lone Star.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Frost and Justices Jewell and Poissant. (Frost, C.J. majority).

5